STATE BANK OF COMMERCE OF BROCKPORT, NEW YORK, by JOSEPH A. BRODERICK, Superintendent of Banks of the State of New York, Plaintiff, *v.* HOWARD G. STONE, as Treasurer of the Farm Department of the Monroe County Farm and Home Bureau Association, Defendant.

Supreme Court, Monroe County, July 22, 1932.

*Harlan W. Rippey,* for the plaintiff.

*Warren, Shuster, Case & Halsey,* for the defendant.

CUNNINGHAM, J. This is an action to set aside an agreement entered into between the State Bank of Commerce and the Farm Bureau of Monroe County, whereby the bank delivered to the farm bureau bonds to secure deposits of the farm bureau in the bank. The plaintiff seeks to recover possession of such bonds pledged as collateral, claiming that the contract is *ultra vires,* was made without consideration and that the president of the bank did not have authority to pledge the bonds in question. The defendant claims that the funds of the farm bureau are public funds and that it was proper for the bank to give security for funds deposited by the farm bureau and that the contract is valid.

The farm bureau is organized under the County Law, section 12, subdivision 28-a (added by Laws of 1917, chap. 281, as amd. by Laws of 1930, chap. 769), and is " a public county association." It is formed " to encourage and promote the general improvement of agricultural and home conditions." Cornell University, " as agent for the State " has general supervision and direction of the work of the farm bureau.

It must be admitted that the improvement of farms and farm conditions and the betterment of homes is a matter in which the people generally are interested.

Public education is a governmental function, and this is so whether it relates to the teaching of reading, writing and arithmetic, manual training and physical culture, or to the improved methods to be used in the conduct of farms and homes.

When an association is authorized and directed to perform governmental functions, the moneys held by it for such purposes must be considered to be public funds. Most of the moneys in possession of the defendant come from the Federal government, the State of New York and the county of Monroe. In addition, there are some dues paid by members. This fact does not affect the character of the money, as most public moneys are derived in part from individuals in the form of taxes. Funds of a " public association," which are to be used solely for governmental purposes under the supervision of a State agency, are public moneys.

It has been the custom of banks to give security for funds

deposited in the banks when such funds are to be used for governmental purposes. It is to the interest of banks to secure deposits for their institutions. It is more important to secure deposits of public funds, because not only does the bank have the use of such funds, but the fact that such deposits are made with it inspires confidence in people as to the reliability of the bank. In order to secure and retain such deposits, it has become almost a matter of necessity for banks to secure the same.

It seems to me that when a bank is in sound condition it is good judgment on the part of its officials to use stocks and bonds which it owns as collateral for the security of public funds deposited with it instead of paying a considerable sum for such security to a surety company.

The president of the bank, with the approval of the executive committee of the board of directors, made the contract with the defendant and transferred the securities to it. Under the by-laws, the bank president had general supervision of its banking business and was specifically authorized to sign " transfers of securities held by the Bank." This gave him the power to pledge the bonds in question as security for deposits made by the farm bureau. In reliance upon this contract and the collateral delivered in accordance therewith, the defendant left with the bank funds it had on deposit and afterwards made additional deposits.

I am, therefore, of the opinion that the contract made between the bank and the farm bureau is valid and enforcible and that the defendant is entitled to use the proceeds of the sale of such bonds to defray any loss of deposits caused by the closing of the bank.

The complaint is dismissed, with costs.